UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GUANG PING ZHU AND CHI HOW
CHEUNG, on behalf of themselves and all other
persons similarly situated,

                        Plaintiffs,

                -against-                      **REPORT AND RECOMMENDATION**

A PLUS KITCHEN INC., ZHENG CUN                16-CV-5767 (VSB) (KNF)
ZHENG AND JOHN DOES # 1-10,

                        Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE

## BACKGROUND

Guang Ping Zhu ("Zhu") and Chi How Cheung ("Cheung") commenced this action against A Plus Kitchen Inc. and Zhen Cun Zheng ("Zheng"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, New York Labor Law ("NYLL"), Articles 6 and 19 and Title 12 of the Compilation of Codes, Rules and Regulations of the state of New York ("NYCRR"), to recover: (1) unpaid minimum wages; (2) unpaid overtime compensation; (3) unpaid spread-of-hours compensation; (4) unlawful deductions; and (4) for violations of the notice and record-keeping requirements. On December 19, 2018, "a default [was] entered against A Plus Kitchen Inc. and Zheng Cun Zheng on the issue of liability" and the matter was referred to the undersigned for an inquest on damages and attorney's fees. Before the Court are the plaintiffs' unopposed inquest submissions. The plaintiffs seek $142,697.67, consisting of: (1) $67,346.62, Zhu's damages; (2) $42,889.15, Cheung's damages; (3) $31,347.50, attorney's fees; and (4) $1,114.40, expenses.

1

## PLAINTIFFS' INQUEST SUBMISSIONS

Zhu submitted his declaration stating that he worked for the defendants as a delivery person, five and one-half days weekly, from the end of August 2014, through mid-December 2015. Zhu worked 11 ½ hours daily on Mondays through Thursdays, from 11a.m. to 10:30 p.m., five and one-half hours daily on Fridays, from 5 p.m. to 10:30 p.m., and ten and one-half hours on Sundays, from 12 p.m. to 10:30 p.m. Zhu did not receive any breaks, working 62 hours weekly. During his employment with the defendants, Zhu was paid a monthly salary of $1,200. Zhu received tips for making deliveries, which were pooled among all delivery employees. Zhu never received paystubs or notices about his pay rate. Zhu stated that he was required to use his motorcycle to complete deliveries, but the defendants did not reimburse him $2,000, the expense he incurred to buy the motorcycle for the job, and the $100 per month he spent on gasoline.

Cheung submitted his declaration stating that he worked for the defendants as a delivery person, five and one-half days weekly, from July 21, 2015, through March 24, 2016. Cheung worked 11 ½ hours daily on Tuesdays through Fridays, from 11a.m. to 10:30 p.m., ten and one-half hours on Saturdays, from 12 p.m. to 10:30 p.m. and five and one-half hours daily on Sundays, from 5p.m. to 10:30 p.m. Cheung did not receive any breaks, working 62 hours weekly. During his employment with the defendants, Cheung was paid a monthly salary of $1,000. Cheung received tips for making deliveries, which were pooled among all delivery employees. Cheung never received paystubs or notices about his pay rate. Cheung stated that he was required to use his moped to complete deliveries, but the defendants did not reimburse him $800, the amount he spent on gasoline during his employment with the defendants.

The plaintiffs assert that during the relevant time, the minimum wage in New York was $8 per hour, until December 30, 2014, $8.75 per hour, until December 30, 2015, and $9

2

thereafter. Calculated under the FLSA, Zhu's effective wage rate was $4.47 per hour and Cheung's effective wage rate was $3.72 per hour. Under New York law, Zhu's and Cheung's regular rates of pay, calculated by dividing their weekly pay by the lesser of their hours worked or 40 hours, were $6.92 for Zhu and $5.77 for Cheung. The defendants never notified the plaintiffs about the statutory requirements regarding tip credits; thus, the defendants were required to pay the full minimum wage under the FLSA and, similarly, under New York law.

Exhibit D attached to a certification by the plaintiffs' counsel, David Stein ("Stein"), indicates that the defendants owe $4,472.31 to Zhu and $4,293.08 to Cheung, in minimum wage damages. Since the plaintiffs were not paid overtime compensation for working more than 40 hours weekly, the defendants owe $19,453.50 to Zhu and $10,2015.25 to Cheung in overtime compensation. Moreover, under New York law, the defendants owe $2,947.50 to Zhu and $1,546.25 to Cheung, in spread-of-hours compensation for working more than ten hours in a workday. The plaintiffs contend that they should be compensated for unreimbursed expenses, required by the defendants to be incurred in connection with deliveries, of: (a) $3,600, for Zhu's tools of the trade, consisting of $2,000 to purchase his motorcycle and $100 for monthly gasoline purchases for about 16 months; and (b) $800, for Cheung's gasoline purchases. The plaintiffs assert that they are entitled to an award of liquidated damages equal to 100% of the award for unpaid minimum wage, overtime compensation and spread of hours, totaling $26,873.31 for Zhu and $16,044.58 for Cheung. The plaintiffs maintain that they are owed the statutory maximum in damages for the defendants' failure to comply with notice and record-keeping requirements, $5,000 for each claim for a total of $10,000.

Stein states, in his declaration, that he is a founding partner of Samuel & Stein ("S&S") and had been counsel in more than 350 federal wage-and-hour cases. Stein graduated from

George Mason University School of Law and has practiced law since 1990, focusing on labor law almost exclusively since 2008, including trying several federal wage-and-hour cases to verdict and serving as lead counsel in large class actions. David Nieporent ("Nieporent") is a senior associate with S&S and has practiced law since 2001, with a focus on wage-and-hour litigation since 2008. Nieporent "has second chaired several wage and hour trials in federal court." Stein states that regular hourly rates at which legal services were rendered to the plaintiffs are: (i) $400 for Stein; (ii) $325 for Nieporent; (iii) $350 for Vincent Wong ("Wong"), Stein's co-counsel; (iv) $275 for Eugene Kroner ("Kroner"), Wong's associate; and (v) $125 for Joe Chen ("Chen"), Wong's paralegal. According to Stein, these rates were approved as reasonable in other cases and "for simple tasks that do not require the expertise of a partner, I billed at lower rates when I undertook them." Attached to Stein's certification are Exhibit F, containing "records detailing attorneys' fees and costs incurred by plaintiffs in connection with this matter, through the date this order to show cause was originally filed," and Exhibit G, containing "receipts for the costs incurred."

Wong states, in his declaration, that he is a partner at the law office of Vincent Wong and co-counsel in this case and he has practiced law since 1996. Wong states that his associate, Kroner, "has been admitted to practice law since 2013" and his paralegal, Chen, "is fluent in Mandarin Chinese, and I routinely bill him at $125 per hour."

The plaintiffs seek attorneys' fees as shown in the following table contained in Stein's certification:

4

| Attorney | Class | Rate | Billed Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 18.6 | $6,710.00 |
| David Nieporent | Senior Associate | $325 | 42.0 | $13,487.50 |
| Vincent Wong | Senior Partner | $350 | 20.4 | $7,140.00 |
| Eugene Kroner | Associate | $275 | 4.4 | $1,210.00 |
| Joe Chen | Paralegal | $125 | 22.4 | $2,800.00 |
| TOTAL | | | 107.8 | $31,347.50 |

In a footnote attached to the word "Rate" in the table, Stein states: "This is the primary billing rate for that individual; as described *supra*, some tasks were billed either at half rate or less because of the nature of the task. That information is reflected in the billing records attached as Exhibit F." The plaintiffs seek "expenses of $1,114.40, consisting of $400 (filing fee); $106 (service of process); $16.50 (subway); and $591.90 (deposition)."

## LEGAL STANDARD

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." Id. When assessing damages, a court cannot "just accept [the plaintiff's] statement of the damages"; rather,

damages must be established "with reasonable certainty." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

### FLSA

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages . . . not less than . . . $7.25 an hour.

29 U.S.C. § 206(a)(1)(C).

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

"The regular rate of pay at which the employee is employed may in no event be less than the statutory minimum." 29 C.F.R. § 778.107. "The 'regular rate' under the Act is a rate per hour," unless an employee's earnings are determined on another basis. 29 C.F.R. § 778.109. "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109. "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However,

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [an action under FLSA] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended,

6

the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.

[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act.

29 C.F.R. § 531.35.

"[I]n addition to any judgment awarded to the plaintiff or plaintiffs," the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### NYLL

The basic minimum hourly wage rate was $8.00 per hour on and after December 31, 2013, $8.75 per hour on and after December 31, 2014, until and including December 30, 2015, $9 per hour on and after December 31, 2015, until and including December 30, 2016. See NYCRR § 146-1.2. "An employer shall pay an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 NYCRR § 146-1.4. "The spread of hours is the length of the interval between the beginning and end of an employee's workday." 12 NYCRR § 146-1.6. "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 NYCRR § 146-1.6(a). "The term regular rate shall mean the amount that the employee is regularly paid for each hour of work, before subtracting a tip credit, if any. 12 NYCRR § 146-3.5(a).

> If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40

7

hours or the actual number of hours worked by that employee during the work week.

12 NYCRR § 146-3.5(b).

"If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." 12 NYCRR § 146-2.7(c).

New York Labor Law requires every employer to provide written notices of the rate of pay and the basis thereof, whether paid by the hour or otherwise, any allowances and certain other information, as well as statements, "with every payment of wages, listing" certain information, including the dates of work covered by that payment of wages and the rate of pay and basis thereof. NYLL §§ 195(1) and (3). A plaintiff may recover for the employer's failure to provide required notices damages not exceeding $5,000 under each of NYLL §§ 195 (1) and (3). See NYLL §§ 198 (1-b) and (1-d). NYLL Article 19 provides:

> If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

NYLL § 663(1).

"No employer shall make any deduction from the wages of an employee, except deductions which," inter alia, "are expressly authorized in writing by the employee and are for the benefit of the employee, provided that" certain conditions are met. NYLL § 193(1)(b).

## Attorney's Fees

When exercising their discretion to determine the reasonableness of the attorney's fees sought in an action based on a federal question, courts in this Circuit use the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). In calculating the presumptively reasonable fee, a district court must consider, among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). See Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d at 190. Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 186-87 n.3.

A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 208 (2d Cir. 2005) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984)). "Thus, 'a reasonable hourly rate' is not ordinarily ascertained simply by reference to rates awarded in prior cases." Id. "[T]he equation in the caselaw of a 'reasonable hourly fee' with the 'prevailing market rate' contemplates a case-specific inquiry into the prevailing market rates for counsel of similar, experience and skill to the

fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Id. at 209. "[T]he fee applicant has the burden of showing by 'satisfactory evidence—in addition to the attorney's own affidavits'—that the requested hourly rates are the prevailing market rates." Id. (quoting Blum, 465 U.S. at 896 n.11, 104 S. Ct. 1547 n.11). Attorney-fee awards include reasonable out-of-pocket expenses that are charged to clients ordinarily, such as photocopying, travel, telephone costs, postage and computerized research. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). A fee application that is not supported by evidence of "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done" should normally be denied. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

## APPLICATION OF LEGAL STANDARD

### *Plaintiffs' Damages*

Based on the inquest submissions, the Court finds that the plaintiffs established with reasonable certainty their unpaid minimum wages, overtime compensation, spread-of-hours compensation, tools of the trade compensation and compensation for notice and wage requirements violations. Upon review of the plaintiffs' inquest submissions, the Court finds that the plaintiffs' calculations of damages owed by the defendants are correct. The following damages incurred by the plaintiffs are warranted:

| Plaintiff & Time Period | Minimum Wage | Overtime | Spread-of-Hours | Liquidated Damages | Notice Violations | Tools of Trade | Total |
|---|---|---|---|---|---|---|---|
| ZHU 8/21/14 to 12/15/15 | $4,472.31 | $19,453.50 | $2,947.50 | $26,873.31 | $10,000 | $3,600 | $67,346.62 |
| CHEUNG 7/21/15 to 3/24/16 | $4,293.08 | $10,205.25 | $1,546.25 | $16,044.58 | $10,000 | $800 | $42,889.16 |

*Reasonable Attorney's Fees and Costs*

This action does not involve any novel or difficult questions. The time and labor required in this simple and straightforward matter involving two plaintiffs, both delivery persons who worked for the defendants during a very short period of time, are not significant. The Court finds that the level of skill required to perform the legal services properly in this matter is basic. The plaintiffs did not provide any evidence showing: (a) whether counsel's fees are fixed or contingent; (b) any preclusion of employment by the attorneys due to acceptance of the case; (c) the undesirability of the case, if any; and (d) the nature and length of the plaintiffs' professional relationship with counsel. The plaintiffs presented no evidence justifying the involvement of two law firms, including two senior partners, in this simple and straightforward case.

Wong did not identify, in his declaration, what his or Kroner's customary hourly rates for legal services are and, with respect to Chen, he stated only that "I routinely bill him at $125 per hour." Stein, in his certification, alleged that "Wong's hourly rate is $350" and "his associate Eugene Kroner is billed at $275," but Stein did not assert that he has personal knowledge of the customary hourly rates charged by Wong and Kroner for legal services. Moreover, other than Wong's statements that: (i) he has practiced law since 1996; and (ii) Kroner "has been admitted to practice law since 2013," no evidence exists in the record about Wong's, Kroner's and Chen's respective experience, reputation and ability. Having been provided with an opportunity but

11

failing to: (1) present any evidence in support of Wong's, Kroner's and Chen's hourly rates for legal services; (2) justify the engagement of co-counsel's law firm; and (3) justify the need for the hours claimed by Wong, Kroner and Chen in this action, the Court finds that awarding $11,150 in attorney's fees claimed for Wong ($7,140), Kroner ($1,210) and Chen ($2,800), is not warranted.

The Court finds that, based on Stein's and Nieporent's experience, reputation and ability, their customary hourly rates for legal services of $400 and $325, respectively, are reasonable, and Stein's reduced hourly rate of $200, for two hours of travel and waiting for a conference is reasonable. Upon review of Exhibit F to Stein's certification, the Court finds that the hours expended on work in this action by Stein and Nieporent are reasonable. Although the billing records indicate that Stein performed the administrative task of filing, for which he billed the reduced rate of $125, it does not appear that Stein included those hours in his fee request. Accordingly, awarding $6,710, for Stein's fees, and $13,487.50, for Nieporent's fees, is warranted. The Court also finds that $1,114.40 is reasonable to be awarded in expenses, consisting of: (1) $400, the filing fee; (2) $106, for service of process; (3) $16.50, for subway fare; and (4) $591.90, for "Transcript Services," "Professional Attendance" and "Delivery and Handling" incurred in connection with defendant Zheng's deposition.

## RECOMMENDATION

For the foregoing reasons, I recommend that the following damages be awarded to the plaintiffs: (1) $67,346.62, to Zhu; (2) $42,889.16, to Cheung; (3) $20,197.50, for reasonable attorney's fees; and (4) $1,114.40, for reasonable costs.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, 40 Centre Street, Room 415, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Broderick. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York  
May 29, 2019

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE

13